UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY CLARK,                       )
                                     )
      **Plaintiff,**                  )
                                     )
      v.                             )   Civil Case No. 12-01310 (RJL)
                                     )
COMPUTER SCIENCE CORP., *et al.*,    )
                                     )
      **Defendants.**                )

**MEMORANDUM <ins>S+</ins> OPINION**
August ___, 2013 [## 4, 6, 11, 22, 23, 26]

Plaintiff Anthony Clark initiated this action in D.C. Superior Court against his former employer, Insight Global, Inc., and technology companies Kforce, Inc. and Computer Science Corporation ("CSC"). Plaintiff alleged that defendants erroneously accused him of stealing a laptop, thereby triggering his arrest, detention, and criminal prosecution. Defendants removed this action and filed three motions to dismiss and two motions for summary judgment.[1] Plaintiff moved to amend the complaint in such a way as to eliminate federal jurisdiction and to permit the Court to remand the case. Mot. to

---

[1] Mot. to Dismiss, Aug. 14, 2013 [Dkt. # 4] ("Insight Global's Mot. to Dismiss"); Def. Computer Science Corp.'s Mot. to Dismiss Pl.'s Compl., Aug. 14, 2013 [Dkt. # 6] ("CSC's Mot. to Dismiss"); Def. Kforce Inc.'s Mot. to Dismiss Pl.'s Compl. for Failure to State a Claim for Which Relief May Be Granted, Aug. 21, 2013 [Dkt. # 11] ("Kforce's Mot. to Dismiss"); Def. Insight Global, Inc.'s Mot. for Summ. J., Feb. 28, 2013 [Dkt. # 22] ("Insight Global's Mot. for Summ. J."); Def. Kforce Inc.'s Mot. for Summ. J., Mar. 27, 2013 [Dkt. # 26] ("Kforce's Mot. for Summ. J.").

1

Amend Compl. and Remand, Feb. 27, 2013 [Dkt. # 23] (Pl.'s Mot. to Amend/Remand"). Because plaintiff has failed to state a claim upon which relief can be granted, the Court GRANTS defendants' Motions to Dismiss, DENIES as moot defendants' Motions for Summary Judgment, and DENIES plaintiff's Motion to Amend the Complaint and Remand.

## BACKGROUND

Plaintiff began working for Insight Global as a Senior Systems Analyst in December 2009. Compl., June 27, 2012 [Dkt. # 1], ¶ 16. Both Insight Global and Kforce were subcontractors for CSC, which provided information technology ("IT") services to the Environmental Protection Agency ("EPA"). *Id.* ¶ 13. In resolving IT inquiries at EPA, plaintiff occasionally took inoperable laptops to his home to conduct diagnostic testing. *Id.* ¶ 18. CSC also issued plaintiff a work laptop, which plaintiff occasionally used for work at home. *Id.* ¶ 19. Plaintiff alleges that Insight Global, Kforce, and CSC were aware that employees took home both their work laptops and other, inoperable laptops. *Id.* ¶ 22. Plaintiff also alleges that CSC issued him a "Property Pass" that permitted plaintiff to remove his laptops and other laptops from the job site. *Id.* ¶ 20.

On February 24, 2011, plaintiff took home his work laptop and one inoperable laptop after work. *Id.* ¶ 22. The following day, plaintiff came to work without either laptop. *Id.* ¶ 23. That same day, he learned that his employment with Insight Global

was terminated. *Id.* ¶ 24. He informed Insight Global Account Manager Olivia Wheeler that he had the two laptops, his badge, and a work telephone at his home that he needed to return to Insight Global. *Id.* ¶ 26. In the weeks following his termination, plaintiff called Wheeler and other employees at Insight Global, CSC, and Kforce several times to arrange the return of the work property, but he was unable to return the property. *Id.* ¶¶ 27-30.

Over a month after plaintiff's termination, Kforce contacted the Department of Homeland Security ("DHS") to report the inoperable laptop as stolen. *Id.* ¶ 32. Because the laptop contained software that traced its location when connected to the internet, DHS detected that the laptop was in plaintiff's possession. *Id.* ¶¶ 35-37. After a DHS agent contacted plaintiff about the laptop, plaintiff returned his work laptop on June 15, 2011 and returned the inoperable laptop on June 20, 2011. *Id.* ¶ 40.

Three days later, a DHS agent informed plaintiff that he was the subject of an outstanding arrest warrant for receiving the "stolen" laptop. *Id.* ¶ 41. Plaintiff voluntarily surrendered to the police six days later, at which time he was handcuffed, subjected to a search, and detained for approximately 15 hours. In September 2011, he went to trial in D.C. Superior Court, for which defendants provided witnesses and testimony in an effort to prove that plaintiff committed the crime. *Id.* ¶ 52. After the short trial, plaintiff was found not guilty. *Id.* ¶ 51, 53.

## STANDARD OF REVIEW

Defendants move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the complaint fails to state a claim upon which relief can be granted. In evaluating defendants' motions, the Court must "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citations and internal quotation marks omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations and internal quotation marks omitted). Rather, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted); *see also Twombly*, 550 U.S. at 555 (factual allegations must "be enough to raise a right to relief above the speculative level"). "[T]he court need not accept inferences drawn by plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Defendants also move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is proper where the pleadings, stipulations, affidavits, and admissions in a case show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must accept as true the evidence of, and draw "all justifiable inferences" in favor of the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine issue exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## ANALYSIS

Plaintiff's complaint against defendants alleges five claims of torts: false arrest, malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent hiring, training, supervision and retention. Compl. ¶¶ 31-79. Unfortunately, for plaintiff, he fails to plead the facts necessary to establish the elements of any of his claims. Because the complaint lacks allegations to support plausible claims, defendants' Motions to Dismiss are GRANTED, and defendants' Motions for Summary Judgment are DENIED as moot. Further, because plaintiff cannot be permitted to amend his complaint for the purpose of eliminating federal jurisdiction, plaintiff's Motion to Amend Complaint and Remand is DENIED.

I.   **Defendants' Motions to Dismiss**

Defendants' motions to dismiss must be granted because plaintiff has not put forth "sufficient factual matter" to create any plausible claims for relief against any of the defendants. *Iqbal*, 556 U.S. at 678. Plaintiff's first claim, false arrest, requires facts sufficient to conclude that he was unlawfully detained. *Dewitt v. District of Columbia*, 43 A.3d 291, 295 (D.C. 2012); *see also Magwood v. Giddings*, 672 A.2d 1083, 1086 (D.C. 1996) (probable cause for an arrest and detention constitutes a valid defense to false arrest claim). False arrest does not occur when a person simply "giv[es] facts to an officer showing that an offense has been committed," *Smith v. District of Columbia*, 399 A.2d 213, 218 (D.C. 1979), unless that person "knowingly and maliciously" makes a false report to the police, *Vessels v. District of Columbia*, 531 A.2d 1016, 1020 (D.C. 1987).

Plaintiff simply alleges that the defendants "knew or should have known" that the property was not stolen when they "instigated, directed, participated in, and effected the [plaintiff's] arrest." Compl. ¶ 44-46. But plaintiff's facts, even if assumed true, do not support such an allegation. Plaintiff never alleges that CSC or Insight Global made any report to law enforcement that led to his arrest. Regarding the only defendant that allegedly contacted law enforcement—Kforce—plaintiff fails to show that Kforce knowingly or maliciously made a false report. Plaintiff simply states that he made "several calls to staff of [defendants]" to arrange to return of the laptops, but "Defendants filed [sic] to assist or cooperate in the return of said property." *Id.* ¶ 30. Taken together,

these facts, at best, demonstrate negligence by Kforce, but they cannot produce the conclusion that Kforce knowingly and maliciously made a false report regarding the laptop.

Similarly, plaintiff does not allege sufficient facts to support a claim of malicious prosecution. For a malicious prosecution claim, a plaintiff must allege "(a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) 'Malice,' or a primary purpose in instituting the proceeding other than that of bringing an offender to justice." *DeWitt*, 43 A.3d at 296 (quoting *Jarrett v. Walker*, 201 A.2d 523, 526 (D.C. 1964)). As with the false arrest claim, plaintiff identifies no facts to support an allegation that defendants acted with malice toward plaintiff. The conclusory allegation that "[d]efendants, jointly and severally, acted with malice in instigating and prosecuting said criminal action," Compl. ¶ 60, is inadequate to support a malicious prosecution claim.

Plaintiff also fails to state facts sufficient to support his claim of intentional infliction of emotional distress. Intentional infliction of emotional distress requires proof of the following elements: "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Baltimore v. District of Columbia*, 10 A.3d 1141, 1155 (D.C. 2011) (citations and internal quotation marks omitted). To qualify as "extreme and outrageous," the

conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all plausible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002) (citations omitted). By no stretch of the imagination could any of defendants' actions, as stated in the complaint, be considered extreme and outrageous under this exacting standard.

Like his claim of intentional infliction of his emotional distress, his claim of negligent infliction of emotional distress also must be dismissed. To support a claim of negligent infliction of emotional distress, plaintiff may show that defendants caused him direct physical injury or placed him in a "zone of physical danger" that caused him serious emotional distress. *District of Columbia v. McNeill*, 613 A.2d 940, 943 (D.C. 1992); *Williams v. Baker*, 572 A.2d 1062, 1067 (D.C. 1990). While plaintiff alleges that he was "handcuffed, subjected to a search of his body, [and] placed in a holding cell" by police, Compl. ¶ 43, he does not allege that the arrest caused him direct physical injury or was placed in a zone of physical danger. Indeed, he states that he "voluntarily surrendered" to police, absent any physical altercation. *Id.* ¶ 42. His allegations of "headaches and sleeplessness," *id.* ¶ 64, are psychological symptoms—not a direct "physical injury" actionable under this claim.

Absent physical harm or a "zone of physical danger," plaintiff may claim negligent infliction of emotional distress if he shows that "(1) the defendant has a relationship with

8

the plaintiff . . . of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." *Hedgepath v. Whitman Walker Clinic*, 22 A.3d 789, 810-11 (D.C. 2011). Plaintiff claims that defendants "owed a duty of reasonable care to Plaintiff to investigate any claim regarding stolen property to determine if in fact the allegations have a basis in fact," Compl. ¶ 66, but plaintiff does not identify the "relationship [with defendants] that necessarily implicates [his] well-being" that the claim requires. Even if his employer-employee relationship with Insight Global were sufficient,[2] the conduct at issue occurred after plaintiff was no longer employed. Further, it is, to say the least, a stretch to suggest that, by failing to investigate a stolen property claim, defendants were "especially likely" to cause "serious emotional distress" to plaintiff.

Finally, plaintiff's claim of negligent hiring, training, supervision, and retention cannot stand.[3] Negligent hiring, training, supervision, and retention require a showing of

---

[2] *See Hedgepath*, 22 A.3d at 812-13 (to create negligent infliction of emotional distress, the relationship "must 'implicate' the plaintiff's emotional well-being," such as that of a psychiatrist/therapist or doctor/patient).

[3] This Court assesses this claim under both Virginia law and District of Columbia law, as defendant Insight Global states that its hiring, training, supervision, and retention occur in its Virginia office. *See* Insight Global's Mot. to Dismiss at 17. For the Court's purpose, the two states' laws are quite similar with respect to negligent hiring and negligent retention. *See J. v. Victory Tabernacle Baptist Church*, 372 S.E.2d 391, 394 (Va. 1988) (negligent hiring occurs when an employer places "an unfit person in an employment

common law negligence: that an employer failed to use reasonable care in selecting, training, supervising, or retaining an employee, thereby proximately causing harm to plaintiff. *See Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d 235, 251 (D.D.C. 2011) (quoting *Fleming v. Bronfin*, 80 A.2d 915, 917 (D.C. 1951)); *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 31 (D.D.C. 2011); *Phelan v. City of Mount Rainier*, 805 A.2d 930, 940 (D.C. 2002). Yet nowhere in his complaint does plaintiff state facts to explain how defendants were purportedly negligent in how they hired, trained, or supervised their employees. The only employee mentioned by name is Insight Global's Olivia Wheeler, who allegedly failed to respond to plaintiff's requests to return his laptops. Compl. ¶ 25-29. Assuming these facts to be true, these facts certainly do not show that Insight Global failed to properly train or supervise Wheeler, that Insight Global knew or should have known that Wheeler was likely to harm plaintiff, or that Wheeler's actions were a proximate cause of plaintiff's harm. Absent such facts, plaintiff has not established the elements of his final negligence claims against defendants.

---

situation involving an unreasonable risk of harm to others"); *Southeast Apartments Mgmt., Inc. v. Jackman*, 513 S.E.2d 395, 397 (Va. 1999) (negligent retention "based on the principle that an employer . . . is subject to liability for harm resulting from the employer's negligence in retaining a dangerous employee who the employer knew or should have known was dangerous and likely to harm"). The Supreme Court of Virginia has not yet recognized a cause of action for negligent supervision or negligent training. *See Hernandez v. Lowe's Home Centers, Inc.*, 83 Va. Cir. 210 (Va. Cir. Ct. 2011). Even if these causes of actions exist under Virginia law, plaintiff has failed to state facts that support these claims under any conception of common law negligence.

## II.     Plaintiff's Motion to Amend Complaint and Remand

*In lieu* of opposing defendants' motions to dismiss, plaintiff moves to amend his complaint and remand the case to D.C. Superior Court.   Pl.'s Mot. to Amend/Remand at 1.  Specifically, plaintiff seeks to remove defendant CSC and reduce his compensatory and special damages from $800,000 to $70,000, thereby removing this Court's subject matter jurisdiction over his complaint.  *Id.*  The remainder of plaintiff's claim would remain substantively identical.

A plaintiff cannot amend his pleading solely to defeat diversity jurisdiction.  *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293-94 (1938) ("events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of volition, do not oust the district court's jurisdiction"); *Kopff v. World Research Group, LLC*, 298 F. Supp. 2d 50, 57 (D.D.C. 2003) ("the time for assessing jurisdictional amount is at the time of removal").  Even if plaintiff's amendment were permissible, a court may deny leave to amend if the amendment would be futile.  Since plaintiff's proposed complaint does not change or enhance the factual allegations from his original complaint, his amended complaint would fail to state a claim for the same reasons discussed above.  For both of these reasons, his motion to amend his complaint and remand is denied.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motions to dismiss,

DENIES as moot defendants' motions for summary judgment, and DENIES plaintiff's motion to amend the complaint and remand. An order consistent with this decision accompanies this Memorandum Opinion.

```
_____
RICHARD J. LEON
United States District Judge
```